Please state your name and appearance, and good morning. Good morning. May it please the Court, Maxwell Baldy on behalf of Nepinul Chheng. I'd like to reserve three minutes for rebuttal. All right. Thank you. The district court erred by assuming that Katchaturian controls the outcome of this case. It does not. Because of that error, the district court never performed the careful examination of history and tradition necessary to determine whether the right we assert is deeply rooted and thus constitutionally protected. That failure alone justifies vacature and remand. Had it performed the proper analysis, the district court would have confronted ample historical evidence establishing that a parent has a right to bring his adult child into the United States. Moreover, two decisions that this court has since issued confirm that the district court reached the wrong conclusion. In Sinclair, this court expressly held that a parent's right to intimate association is a lifelong right that does not end on his child's 18th birthday. And in Munoz, in the immigration context, this court held that the government cannot force a citizen to choose between his right to live in this country and his right to live with a close relative. Well, okay, but let's go back to Katchatrian, that your briefing recognizes that cases explicitly hold that a parent's interest in familial association is reciprocal to a child's interest in familial association. For example, Smith v. the City of Montana. So doesn't that mean that the holding in Katchatrian regarding a child's constitutional interest in a parent's visa application would apply here as well as that this panel would be bound by that decision? So, I mean, essentially we're talking about the child's adult and the parent's an adult, and that if Katchatrian is not binding, it's the reciprocal side of the same argument. So tell me, I mean, I see two ways that if we found it was binding, then game over, right? If we found it was not binding, then the issue becomes whether the reciprocal side. But these are the cases that I would be struggling with to find that reciprocity isn't appropriate here. Yes, Your Honor. So I think on its own terms, Katchatrian doesn't cover the reciprocal case. And the reason is that Katchatrian applies the Glucksberg framework, which requires the right to be defined at sort of the narrowest possible level and then requires the Court to look to whether there is history and tradition supporting the idea that that right is deeply rooted. The history and tradition that supports a parent's right is different from the history and tradition that supports a child's right. None of the examples we point to, right, the Chinese Exclusion Act cases, the alienation of affection cases, none of these speak to the right of an adult child. And so I just don't think that the Katchatrian can be read to speak to a question, would it only answer the question for that narrowly defined right. And I would also say I recognize that the government's pointed to two statements in Katchatrian that sort of purport to speak more broadly. I don't think the question is before the Court about the reciprocal setting. And I don't think so. It wasn't a holding of that case. And I also don't think it can be treated as considered dicta because the arguments we make and the historical evidence we make was never before the Court. It could never have considered it. And so it is just pure obitur dicta, and it doesn't bind this Court. Well, I guess the two – I sort of see you've got two barriers to get past. First, you're asking us to enter into the visa world, okay, and with consular issues. And then the next is that you're asking us to create a situation where, if we want to talk about the Parade of Horribles, that every adult child and adult parent would be able to have everyone in their family with them because you cite to case law that talks about we try to keep families together. So it sounds like an immigration nightmare. Your Honor, if I can address the Parade of Horribles first, I think the holding in this case would be actually quite narrow. And the reason – and it's also the reason why this Court can consider our challenge to a visa denial, which is that the Mandel framework gives extraordinary deference to the government, right? For a court to be able to intervene at all, the government's sort of facially legitimate challenge has to be beset by a plausible allegation of bad faith, right? The plaintiff would have to overcome the presumption of regularity that's particularly strong in this area. The only case that we found where this Court has accepted an argument that the bad faith was plausibly alleged is Constitutorial itself, right? To me, an exceedingly rare circumstance. But because constitutional rights are involved, as we assert, that opportunity has to be given. In terms of whether it would – Well, it doesn't have to be given if you don't make the cut as far as showing that there's a constitutional liberty involved, right? Correct. If there isn't – if the Court disagrees that there's a – Mr. Terry says just that. It was – there was bad faith there. Correct. And the normal mode of analysis is to decide whether bad faith has been alleged and then – and only if that is – you know, to assume that the right exists, decide whether bad faith has been alleged, and then go back and decide if the right  That's not possible here because the district court dismissed that leave to amend and never gave Neppen and Willow a chance to put forward their best allegations of bad faith. Because they – the Court decided that Katchetorian was dispositive of the issue because of the reciprocity concept, right? Correct. They couldn't distinguish the difference. And I'd like to hear you distinguish the situations. Yes. So I'd point to two places. The first is in Guillen and Chung-Toi Ho, the Chinese Exclusion Act cases, right? These are cases where the Chinese Exclusion Act is the first law where Congress has restricted immigration for the first hundred or so years of American history. It never did that. Within a few years, you have Guillen with the Supreme Court expressly adopting the holding – the reasoning of Chung-Toi Ho where the Court says that, you know, a parent has a natural right to bring his child into the country, and that if Congress is going to eliminate that right, he would – the Court would expect it to be done with an expressly clear statement. I think – Does that involve an adult child or a minor child? That involved a minor child, Your Honor. But I don't think that the age of a child has constitutional significance because of the line of cases in this circuit that holds that the right of intimate association – and we're asserting a right that is a subset of intimate association – is a lifelong right. If we were here saying care, custody, and control is all we have, I acknowledge that right ends with adulthood. Well, why wouldn't the right of intimate association apply to the other side of the coin, which is the adult child seeking to bring in an adult parent? So – The Katchatarian drew distinctions based on whether the people involved were already living in the United States. There are distinctions as to whether we're dealing with minors or adults. But you're suggesting that the distinction between whether it's the adult parent seeking to bring in an adult child or an adult child seeking to bring in an adult parent is somehow constitutionally dispositive and makes this an entirely different right. So, Your Honor, the arguments that Katchatarian rejected were rooted in analogies to other due process rights that have been recognized, right? The primary argument that the plaintiff in that case put forward was that under Moore v. City of East Cleveland, there's a right to live with your relatives, and that's enough. And the court rejected that, and it said, you know, this is a Glucksburg case. You need history and tradition. If the court looks at the briefs in Katchatarian, there is no history presented whatsoever. The court does a little bit of work on its own to say that it doesn't believe that history could be there. But that right, as narrowed – You're creating a historical right that people, citizens in this country don't even have. You don't have a right to even necessarily be around your own children when they're young or as an adult, vice versa. And so I'm wondering the historical perspective to give immigrants more of a historical right to be together than citizens in this country have. Well, Your Honor, I don't believe – the government can keep a parent from a child if it meets the requirements of procedural due process. But the government couldn't, with no process whatsoever, with no recourse to judicial review, say that a parent and a child must be separated. And the history that we draw on, right, are the Trans-Exclusion Act cases. I would also point to, in terms of the right to live with a child, I think because they involve an adult child, the alienation of affection cases where courts say, you know, despite the fact that an alienation of affection toward exists, when it's a child returning to the parental home and leaving the marital home, right, because the parental – All those cases have to do with the relationship that existed here in the United States. The alienation of affection cases do, Your Honor. But I am suggesting that this is a – that this right is – right, it is universal. It is deeply rooted. The – when it comes to the – to the – whether it can exist in this country, I would point to Munoz, where, you know, the U.S. citizen – NEP is a U.S. citizen. He has a pair of rights, the right to live in this country, the right to live with his child. And those can't be conditioned on one another. There's no other context where the court would simply accept unconstitutional conditions that, you know, where the unconstitutional conditions doctrine wouldn't prevent the government from doing that. I think the other point I'd like to make, because this is important about the limited scope of the right, is we don't dispute that Congress has plenary power to regulate immigration. As long as – and in Fiala v. Bell, the Supreme Court held that essentially the standard that Congress has to act in good faith and in a facially legitimate way, that's enough to sustain a decision against a constitutional – sorry, a legislative rule against a constitutional challenge. So I'm not suggesting that if the court agrees with us and reaches a constitutional question and agrees with us that Congress can no longer restrict families from coming into the country. What I am saying is that because this sort of crucial right is implicated, because this right is sort of the heart of the family relationship is implicated, that the executive cannot in bad faith separate a parent from a child, right? If the – acting in good faith, they can deny the visa, and that's – we don't challenge that. But what we're saying is in that limited circumstance where this sort of crucial right is at issue, the limited review that the Supreme Court has allowed in Mandel and this court has allowed in many cases applying Mandel should be available. So on the – just on the motion to amend, I would like you to just briefly address that it would appear on the bad faith on the part of the consular officer that you haven't articulated what facts would overcome what is essentially a concession by NMULE presented false documents, even if they were due to a passport scam, or what specific information contradicts the finding of alien smuggling. It just – I don't – if we let you – if we let you go further, but then you'd have to show that there would be some – that you'd be able to show bad faith. And I don't see any offer of proof. I don't see anything in the record to show that you could overcome that. Yes, Your Honor. So I'd like to say three things. The first is that under this court's precedence, a plaintiff doesn't even need to ask for leave to amend, to be granted leave to amend. The only case where that's – you know, where leave to amend can't be granted is if the district court makes a finding that there aren't facts that could state a valid claim. And I don't think the district – the district court's decision can be fairly read to make that finding. So I don't think it's our burden here with a closed record to do that. What I would point to, though, is to say that the sort of facts that they would need to allege would be, you know, a detailed discussion of what NMULE's interactions were with the consular officer, of what the – of what any correspondence he had with the consular officer and with the government are. In terms of what facts could overcome bad faith, I'd point out that both of these grounds for inadmissibility have a scienter requirement. They need to be that he knowingly presented false documents, that he knowingly attempted – assisted his sister in an unlawful attempt to enter the United States. And that bar, as this Court held a couple of years ago, is essentially, you know, the equivalent of criminal solicitation or aiding and abetting. And so if there were – if, for example, there was no evidence that – to prove state of mind, that could go to bad faith. But what I'm saying is that the – you know, in general, unless it's impossible to think of facts that could be alleged that could put – support a valid claim, the rule in the circuit is one free chance of an amendment. And they didn't get that. And I'd also like to just emphasize that they were – You're about out of time. Do you really want to – No, Your Honor. I will reserve my final minute. Thank you. Okay. Let me make sure my colleagues don't have any questions. Okay. I'll give you two minutes for rebuttal. I appreciate it. Thank you. Okay. Thank you. Good morning. Good morning, Your Honors. Excuse me. May it please the Court. My name is Alessandra Faso, and I am here representing the government. The government respectfully requests that this Court affirm the district court's dismissal of the Ching's complaint without leave to amend based on the principles of the doctrine of consular nonreviewability. The district court, sua sponte, thoroughly considered whether to grant leave to amend. And even though the Ching's, who were proceeding pro se at the district court level, did not ask for that leave to amend. And the district court did not abuse its discretion in declining to grant the Ching's leave to amend in its reliance on this circuit's decision in Cachatrayan. Even assuming that this Court disagrees with the government that Cachatrayan doesn't control, leave to amend would still be futile because, as Your Honors noted, the Ching's cannot point to any facts indicating that the consular officer acted in bad faith in his determination that NEML was inadmissible for those two reasons. Well, you say they can't. They haven't really been given an opportunity to. How do you know they can't? Your Honor, this case, rather, NEML and NEP have been trying to be reunited in the United States since about 2008. And this case has proceeded based on a variety of administrative appeals and has now come to district court. And there has never been any allegation of fact throughout this entire process to indicate any bad faith on behalf of the consular officer in this case. And it's telling. Have allegations of smuggling and false documents been litigated at any stage? The Ching's have not contested the propriety of the findings of the alien smuggling or the fraud or misrepresentation. And they don't challenge the fact that the consular officer did provide. Didn't it go a little bit further? Your Honor, didn't NEML admit that of the presenting of the son, didn't he admit presenting a false passport? He tried to explain it because it was a passport scam, he claimed, but he admits presenting it. Is that correct? That's correct, Your Honor. And the key here is that NEML does admit that he was the victim of a passport scam and appears to attribute the bad faith not on the part of the consular officer but on behalf of that individual who sold him a fraudulent passport. And it's critical to understand that the allegation of bad faith must be attributed to the consular officer. And this Court's decision in the Bustamante case clarifies that it's not enough in order to amply plead bad faith just to show that the information before the consular officer was perhaps incorrect. And so the Changs are unable to demonstrate that there is bad faith, and it's also telling that there has been no proffer of additional facts before this Court to further establish that if this Court agrees with the Changs, that they would be able to amend their complaint to plausibly state a claim. But let me just make sure I understand the record. Now, my understanding of the statute on alien smuggling is that it can't include your sister to be given relief over that. Is that right? That's correct, Your Honor. There are so the Changs applied for a waiver of inadmissibility, and for the charge of alien smuggling, the agency can waive that ground of inadmissibility for certain family members if they're involved. Siblings do not fall within the ambit of that waiver provision, so unfortunately that would render an email statutorily ineligible for this benefit. And that finding, though the agency who denied the waiver application was U.S. Citizenship and Immigration Services, who is a component of the Department of Homeland Security, even though that agency is not the Department of State, which is the traditional agency that courts deal with with respect to issues of visa denials at consular posts abroad, this particular case falls squarely within the principles of the doctrine of consular nonreviewability because the denial of a waiver of a ground of inadmissibility, whether it's DHS or the Department of State, that is an act of the executive. And the decision of an executive agency, whether it's state or homeland security, to decline admission to a foreign national, that is not judicially reviewable unless a U.S. person, meaning a U.S. citizen or a lawful permanent resident, can allege a constitutionally protected liberty interest in that individual's entry. And so that goes back to the conversation that Your Honors were having earlier with counsel about whether or not Katchatrain controls in this case and whether or not either Niemel or his father Knapp can state a constitutionally protected interest in Niemel's entry into the United States. So I'll briefly touch on that. So just so that I understand, if there's not a liberty interest, then the bad faith analysis isn't really we're not required to go there. That's correct, Your Honor. So there's a threshold issue of whether or not the individual who's challenging the visa denial can plausibly allege that there is a constitutionally protected liberty interest. And while the government appreciates counsel's briefing on the history of the parent-child relationship, they fail to square the fact that there is an equally fulsome history of Congress's plenary power to determine who to admit to the United States. So what about, from your perspective, cases like Sinclair, where they're a case recognizing a parent's right of familial association with an adult child? How does that fit into your analysis here? Your Honor, Sinclair involves a U.S. citizen mother and her adult U.S. citizen child. There is no element of that immigration piece in Sinclair and, frankly, in many of the other cases that counsel cites in the briefing. And so without acknowledging the fact that there is a component of that power to exclude and the deference that courts have traditionally shown to executive agencies in exercising that power, those cases aren't persuasive at this juncture. So the status of the people in this case are, and that's how you distinguish from Sinclair, is that? Yes, Your Honor. So we have a U.S. citizen parent and his foreign national child, and this court explained in Cachetrian that the Supreme Court's line— —was the U.S. citizen child. And a foreign national adult. National parent. Parent, yes. And so in that case, this court correctly acknowledged that the Supreme Court's line of cases have never suggested that whatever protection applies to extended family relationships entails a constitutionally-rooted expectation that an individual would be allowed to bring in one's parents or adult children into the United States. And a district court in the Central District of California, Sing v. United States Department of State, cited Cachetrian for that inverse set of facts, concluding that Cachetrian's reasoning logically applies to the inverse situation. And counsel's not able to articulate why those two relationships are different in any material way. The right not to be expelled from someone's country does not necessarily, as a U.S. citizen or a lawful permanent resident, for example, doesn't necessarily include the right to have one's adult relatives immigrate with them. And so that's an important distinction that this court should acknowledge. And I'll briefly address counsel's reliance on the Chinese Exclusion Act cases, as those should not control in this case. Those cases relied on the explanation that the domicile of a wife and children is that of the husband and father. And so this is quite a—it's rooted in tradition, but also the fact that this individual, this particular case, involved minor children I think is dispositive. And so in that case, there was an adult—excuse me, a minor child who was a foreign national and a U.S. citizen father, and the Supreme Court understood that to mean that that family should not be separated. This is not the case here. We have an adult son who's in his 30s, and he does not have— and his father does not have a constitutionally protected liberty interest in his son's admission. Once again, even if this court does not agree with the government and does not decide to extend catch-a-try into the inverse situation that we are advocating for, this does not mean that this court should not affirm the district court's decision, dismissing the complaint without leave to amend. Well, let me ask you this hypothetically, and I will ask it— no one ever wants this to publish unless they're going to win, but just let's talk about publication here. Let's say if the panel said that catch-a-try doesn't cover this, is it worthy of publication to say to go on beyond that? Or even if we said catch-a-try does cover that, is that worthy of publication? Just to clarify so that people don't make these arguments. Yes, Your Honor, I think it would be worthy of publication to further clarify what a constitutionally protected right involves in order to either get past the doctrine of consular nonreviewability or to fall within that jurisdictional bar. And it would be helpful to expand that case law. All right. Do either of my colleagues have questions? We don't have more questions. You can use your time, but that's up to you. Thank you, Your Honors. For the reasons stated in the government's briefing and explained here at oral argument today, we'd respectfully request that this court affirm the district court's decision declining to grant the Chang's leave to amend their complaint. Thank you. Thank you. Thank you. I'd like to try to make three points, Your Honor. The first is that the district court didn't finish the Mandela analysis. It didn't look to whether allegations of bad faith could be made. And I think it's wrong to assume that pro se plaintiffs who initially filed in the wrong court under mostly an APA cause of action that's clearly barred by existing precedent would have understood that they need to frame their allegations in terms of bad faith. I also want to note that they do contest the consular officer's findings, and that can be found the USCIS acknowledged that, and it can be found in Excerpt of Record 57. The second point I'd like to make is that extending Katchaturian creates tension with Munoz and Sinclair, and these subsequent cases need to be reconciled with Katchaturian. I think the government's effort to say that Sinclair is only about domestic relationships that already exist runs straight into Munoz, which recognized essentially a citizen's right to bring a spouse into the country based on two domestic rights, the right to marriage and the right to live in the country. I would also say — But isn't that a significant distinction? Hasn't the case law addressed the relationship between spouses in terms different from the Yes, Your Honor. I think the distinction is that an examination of spouses doesn't need to point to history and tradition, but we do point to a series of historical arguments to root the right of a parent to live with his child in the United States. I would also say that we also think that — His minor child. The case law you point to addresses a minor child. The alienation of affection cases don't involve a minor child. Now, those are domestic cases, but so are the cases in Munoz. Right. So it's Sinclair that — Yeah, and it's Sinclair that we think does work there. The adult's special-needs son was killed in the chop. Yes. Right? So wrongful death case, existing relationship, two citizens of the United States. It seems pretty distinguishable. Well, Your Honor, I think we are arguing for a subset of this larger right, and there aren't cases in this circuit in the intimate association context that distinguish based on age. In fact, the cases say the opposite. Now, this case hasn't been presented, you know, relying on sort of historical evidence to establish the right, which we recognize that we need to do. But for it to be constitutionally significant, I think there needs to be a way to distinguish these — the cases that — like Sinclair, and likely that say that there isn't a — that age isn't a barrier. But let's — you're over what you're over. Yes. But take a minute and make your second two points. So I think my — my second point was that extending constitutorial would conflict with Sinclair and with Munoz. My third point is simply that, you know, the Court can reach the constitutional question. It can also hold that the district court should run a Glucksberg analysis. It should have looked at history and applied the wrong standard. And it can remand and allow the district court to do that to a fully pleaded complaint. And if it turns out that — that NEPA and NMUL cannot make allegations that amount to a plausible case of bad faith, then the district court doesn't need to reach that question at all. And I think that's the easiest way to resolve this case and to allow the question to be fully aired and to give NEPA and NMUL the day in court that they want. So hypothetically, if you win, should we publish? Yes. I think — I think — I think — I also think that if the Court decides a constitutional question one way or another, that it's breaking new ground on what we think is a question of first opinion — first impression, then we should publish.  Thank you both for your very helpful arguments. Thank you very much. This matter will stand submitted.
judges: CALLAHAN, BADE, Antoon